UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY D. JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:04CV432 ERW |
| | ) | (TIA) |
| TROY STEELE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Petition of Anthony D. Johnson for a Writ of Habeas Corpus under 28 U.S.C. § 2254. The case was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

### Procedural History

Petitioner Anthony Johnson is currently incarcerated at the Southeast Correctional Center located in Charleston, Missouri, pursuant to the judgment and sentence of the Circuit Court of Cape Girardeau County. On August 29, 2000, a jury found Petitioner guilty of one count of Assault in the First Degree, one count of Armed Criminal Action, and one count of Unlawful Use of a Weapon. (Resp. Exh. B, p. 9) On October 2, 2000, the court sentenced Petitioner to 10 years imprisonment on the assault charge to be served consecutively to 5 years imprisonment for armed criminal action and 5 years imprisonment for unlawful use of a weapon. The 5 year sentences were also to be served concurrently with a 5 year sentence from another conviction. (Resp. Exh. B, p. 10)

---

[1] This case was originally brought against Chuck Dwyer, who is no longer the Superintendent of the Southeast Correctional Center (SCC) where Petitioner is confined. Because Troy Steele is now the Superintendent of SCC, the caption will reflect his name as the proper party respondent. 28 U.S.C. § 2254, Rule 2(a).

Thereafter, Petitioner filed a direct appeal. On June 26, 2001, the Missouri Court of Appeals affirmed the judgment of the trial court. (Resp. Exh. F) Petitioner also filed a motion to vacate under Missouri Supreme Court Rule 29.15 on August 24, 2001; a first amended motion on January 3, 2002; and a second amended motion on January 18, 2002. (Resp. Exh. J, pp. 3-25) After an evidentiary hearing, the motion court denied Petitioner's motion. (Resp. Exh. J, pp. 34-37) Petitioner then appealed that ruling, and on July 22, 2003, the Missouri Court of Appeals affirmed the denial of Rule 29.15 post-conviction relief. (Resp. Exh. M) On April 12, 2004, Petitioner filed the instant petition for habeas relief in federal court.

## Petitioner's Claims

In his Petition, Petitioner raises three claims for relief:

(1) Petitioner received ineffective assistance of counsel because trial counsel failed to call Petitioner's mother, April Johnson, to testify as an alibi witness;

(2) The trial court erred in overruling Petitioner's motion for judgment of acquittal on the unlawful use of a weapon count; and

(3) Petitioner received ineffective assistance of appellate counsel because counsel failed to brief and argue or request plain error review of a claim of insufficient evidence to prove that Petitioner ever fired the weapon.

## Claim One

Petitioner first claims that he received ineffective assistance of counsel because his trial attorney failed to call Petitioner's mother to testify as an alibi witness. Respondent contends that this claim is without merit, as counsel discounted the mother as an alibi witness because an alibi defense was not viable. The undersigned agrees that Petitioner's first claim lacks merit.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir.

1999). A federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record). Where a Petitioner alleges ineffective assistance of counsel, a court "will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).

To establish ineffective assistance of counsel petitioner must satisfy a two prong test. Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) (citation omitted). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. Strickland, 466 U.S. at 694; Bucklew, 436 F.3d at 1018. In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Bucklew, 436 F.3d at 1016 (citation omitted). Because a habeas petition claiming ineffective assistance of counsel involves mixed

3

questions of law and fact, legal conclusions are reviewed de novo, and state court findings of fact are presumed to be correct under 28 U.S.C. 2254(d). Sloan v. Delo, 54 F.3d 1371, 1383 (8th Cir. 1995) (citation omitted).

In the instant case, Petitioner argues that trial counsel was ineffective for failing to call Petitioner's mother, April Johnson, as an alibi witness. Specifically, he maintains that Ms. Johnson was willing and available to testify, and she would have provided a complete and viable defense. Petitioner alleges that his mother's testimony would have shown that Petitioner was not present during the time of the shooting because he was at her home. According to Petitioner, trial counsel did not exercise reasonable trial strategy in failing to call her as a witness. He contends that, but for this alleged ineffectiveness, the outcome of Petitioner's trial would have been different.

The motion court denied this claim in Petitioner's Rule 29.15 motion, and the Missouri Court of Appeals affirmed, reasoning that:

> "To succeed on an ineffective assistance of counsel claim, a movant must prove that his counsel's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that but for counsel's unprofessional error, the result of the proceeding would have been different.'" *Id.* at 157-58. There is a presumption that the trial counsel's performance was reasonable and was not ineffective. *Id.* at 158; *quoting* Clayton v. State, 63 S.W.3d 201, 206 (Mo. banc 2001). Reasonable decisions regarding trial strategy cannot be the basis for an ineffective assistance of counsel claim. *Id.* Trial counsel's decision not to call a witness is presumed to be trial strategy unless clearly shown to be otherwise. *Id.* at 160. To support a claim of ineffective assistance of counsel for failure to call a witness, the movant must show that the witness was available to testify, would testify if called, and would provide a viable defense through his or her testimony. *Id.*
>
> In the instant case, the findings and conclusions of the motion court were not "clearly erroneous." Here, the decision not to call defendant's mother was trial strategy, which, if it was the result of a

reasonable decision, cannot be the basis for an ineffective assistance of counsel claim. Counsel interviewed defendant's mother as a possible alibi witness. Ms. Johnson responded that she did not keep track of her son's comings and goings. As a result, it was certainly reasonable for counsel to discount her as a witness. At some point during the trial, Ms. Johnson contacted counsel to let him know that she was now willing to testify on her son's behalf. Counsel declined, having determined that an alibi defense was not viable. Counsel reasonably concluded that the defendant's mother's testimony would not have been enough to overcome the testimony of three eyewitnesses, including defendant's cousin, all of whom placed defendant at the crime scene.

In addition, defendant's brother, who their mother claimed was with defendant in his bedroom at the time of the shooting, had already pled guilty to participating in the crime, further undermining her credibility. Defendant has merely shown that there was a witness who was able and willing to testify on his behalf. However, Ms. Johnson's testimony would not have provided a viable defense. As a result, trial counsel's performance did not fall below an objective standard of reasonableness. Defendant's point is denied.

(Resp. Exh. M, p. 4)

The undersigned finds that the decision of the Missouri Court of Appeals was not contrary to, nor did it involve an unreasonable application of, the standard articulated by the Supreme Court in Strickland, as Petitioner has failed to demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). As previously stated, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment. Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006). Further, this Court "does not 'second-guess' trial strategy or rely on the benefit of hindsight, . . . , and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective[.]" Williams v. United States, 452 F.3d. 1009, 1013 (8th Cir. 2006) (citations omitted).

The record demonstrates that during the Rule 29.15 evidentiary hearing, Ms. Johnson testified on her son's behalf. She stated that she was with Petitioner in her home during the time of the shootings. (Resp. Exh. I, p. 18) Specifically, she testified that Petitioner was in the bedroom playing Nintendo. (Id.) While she lay on the coach, she heard approximately 6 or 7 gun shots, during which time Petitioner told her to get down. (Resp. Exh. I, pp. 18-19) Ms. Johnson further stated that Petitioner's trial counsel never contacted her and that she did not first meet him until the trial. (Resp. Exh. I, p. 19) She testified, however, that she tried to contact counsel on several occasions for an update on the case. (Id.) Although counsel did not ask Ms. Johnson to testify, she stated that she had been available to testify that Petitioner could not have fired the shots because he was with her during that time. (Resp. Exh. I, p. 20, 23)

The record also shows that counsel interviewed Ms. Johnson early in the case to explore the possibility of an alibi defense. (Resp. Exh. I, p. 35) However, counsel testified that Ms. Johnson's response "was something to the effect of she wasn't his keeper and she didn't follow him when he came and when he left. It was the kind of response that basically had me discount her as an alibi witness." (Resp. Exh. I, p. 35) He also stated that he spoke with Ms. Johnson during the trial and explained to her that he was not pursuing an alibi defense because it was not viable. (Resp. Exh. I, p. 38) According to trial counsel, he did not pursue this defense because Ms. Johnson could not pin down any specific time when Petitioner was in her home. (Id.) Although counsel acknowledged Ms. Johnson's evidentiary hearing testimony that she could pin down the time and that Petitioner was in her home during the time in question, he emphasized that she had not told him this initially. (Resp. Exh. I, pp. 38-39) Further, trial counsel testified that other alleged alibi witnesses were present at the scene of the shooting, which "would have been an alibi that would have exploded" and did not have

6

much chance of success. (Resp. Exh. I, p. 39) Counsel explained that the State would have called impeachment witnesses to prove that some of the alibi witnesses who were allegedly present at the house with Petitioner were actually at the scene during the shooting. (Id.) Instead, counsel's defense strategy was that Petitioner was present but was not the shooter. (Resp. Exh. I, p. 40) Further, at trial, eyewitnesses testified that Petitioner was at the scene and was the shooter. (Resp. Exh. A, pp. 89-91; 114-117)

In light of the testimony adduced by eyewitnesses at trial indicating that Petitioner was present at the crime scene and counsel's testimony that he did not believe that an alibi defense was viable, it was reasonable for Petitioner's attorney not to call Ms. Johnson to testify on her son's behalf. See Johnston v. Luebbers, 288 F.3d 1048, 1055 (8th Cir. 2002) (noting that state court conclusion that attorney's decision not to call witnesses was trial strategy made after investigation and consideration was not contrary to or an unreasonable application of federal law). Thus, counsel's performance was not deficient.

Furthermore, even if counsel's performance was deficient, Petitioner has failed to demonstrate that the outcome of the trial would have been different had his mother testified. As previously stated, witnesses testified that Petitioner was present at the shooting; Petitioner's mother first told counsel that she could not pin point his whereabouts during the time in question; and three other alleged alibi witnesses confessed to being at the scene with Petitioner. There is no indication that the jury would have found an alibi defense viable. As such, there is no evidence that counsel's representation fell below the level of reasonableness or that but for counsel's errors, petitioner would have been acquitted. Wilcox v. Hopkins, 249 F.3d 720, 722 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Thus, the state court's decision that counsel was not ineffective is not contrary to

7

nor an unreasonable application of Strickland, and Petitioner's first claim for habeas relief should be denied.

### Claim Two

Next, Petitioner claims that the trial court erred in overruling Petitioner's motion for judgment of acquittal on the unlawful use of a weapon count because there was insufficient evidence to prove that Petitioner carried a concealed firearm. The Respondent contends that the weapon was viewable from only one vantage point, rendering it a concealed weapon under Missouri law. The undersigned agrees with Respondent that the evidence was sufficient to support the conviction for unlawful use of a weapon.

The Missouri Court of Appeals addressed this issue on direct appeal and found that there was sufficient evidence from which a reasonable juror could have found Petitioner guilty beyond a reasonable doubt. Specifically, the court stated:

> For his first point defendant contends the trial court erred in denying his motion for acquittal on the unlawful use of a weapon charge. He claimed that the state's evidence was insufficient to establish that he carried a concealed weapon because there was evidence that the handle of the weapon was protruding from his pocket and was thus visible from numerous vantage points.
>
> We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case. State v. Foster, 930 S.W.2d 62, 63 (Mo. App. 1996). On a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict, and disregard all contrary evidence and inferences. State v. Purlee, 839 S.W.2d 584, 587 (Mo. banc 1992). Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. Id.

8

>           Section 571.030(1) RSMo provides:
>           1. A person commits the crime of unlawful use of weapons
>      if he knowingly:
>                (1) Carries concealed upon or about his person a knife, a
>                     firearm, a black jack or any other weapon readily
>                     capable of lethal use; . . .
>
>           The essential elements of this crime are the knowing concealment and accessibility of a functional lethal weapon. Purlee, 839 S.W.2d at 590. The only dispute is whether the weapon was "concealed" within the meaning of the statute. The test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation. Purlee, 839 S.W.2d at 590. When the weapon is not fully covered or enclosed, the test is as follows: "A weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point." Id. (quoting State v. Cavin, 555 S.W.2d 653, 654 (Mo. App. 1977); State v. Dunn, 857 S.W.2d 359, 361 (Mo. App. 1993).
>
>           Defendant argues that the weapon was not concealed because Nunley testified that when defendant "turned facing me, I seen the handle hanging out of his pocket," and that he could "clearly see" the handle of the gun in defendant's pocket, although he could not see it when defendant first walked up to him.
>
>           There was no direct evidence that the weapon carried in defendant's pocket was discernible from any other vantage point. The jury could have reasonably inferred that it was not discernible from any other vantage point because the weapon was in defendant's pocket and the victim could not see the weapon as defendant approached, but could only see it when defendant turned. Sufficient evidence supported the trial court's denial of the motion for acquittal. Point one is denied.

(Resp. Exh. F, pp. 2-4)

A federal court's review of a sufficiency of the evidence claim "is limited to determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Gibbs v.

Kemna, 192 F.3d 1173, 1175 (8th Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Here, the record indicates that there was sufficient evidence to support the conviction of unlawful use of a weapon.

Petitioner argues that the gun was not "concealed" under Missouri law, and therefore the evidence was insufficient to support his unlawful use of a weapon conviction. Under Missouri Statute, "[a] person commits the crime of unlawful use of weapons if he or she knowingly: (1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use . . ." Mo. Rev. Stat. § 571.030.1(1) (2005). The Missouri Court of Appeals accurately set forth the test for concealment of a weapon when it is not fully covered or enclosed. (Resp. Exh. F, p. 3) To reiterate, the test is as follows: "'[A] weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point.'" State v. Purlee, 839 S.W.2d 584, 590 (Mo. banc 1992) (quoting State v. Cavin, 555 S.W.2d 653, 654 (Mo. App. 1977)).

The record demonstrates that Petitioner's weapon was viewable only from one vantage point. Victim Aaron Nelson testified that Petitioner walked up to him and pulled out a gun. (Resp. Exh. A, p. 89) There was no indication that he saw the gun at all prior to Petitioner pulling it out of its concealed location just before shooting. Further, witness Joe Willie Nunley testified that he could not see the gun when Petitioner first walked up to him. Mr. Nunley only saw the handle of the gun after Petitioner turned to face him. (Resp. Exh. A, p. 118) Contrary to Petitioner's argument, the record indicates that the witnesses viewed Petitioner from several angles. He walked toward the victim and his friends; patted down one individual; bumped up against the victim; and eventually

pulled out the gun and shot at him. (Resp. Exh. A, pp. 113-116) However, only one witness saw the handle when Petitioner turned. Because the weapon was viewable from only one vantage point, the weapon was "concealed" under Missouri law. Thus, the evidence was sufficient to enable a rational trier of fact to find the essential elements of unlawful use of a weapon beyond a reasonable doubt. Gibbs v. Kemna, 192 F.3d 1173, 1175 (8th Cir. 1999). The finding of the state court was not contrary to nor an unreasonable application of federal law, and Petitioner's second claim for habeas relief should also be denied.

### Claim Three

Last, Petitioner asserts that he received ineffective assistance of appellate counsel for failing to brief and argue on direct appeal or request plain error review that there was insufficient evidence of First Degree Assault or Armed Criminal Action, as there was no proof that Petitioner fired the weapon. Respondent contends that Petitioner procedurally defaulted on this claim because he did not raise it in his state court Rule 29.15 motion.

The record shows that Petitioner raised this claim in his Second Amended Motion to Vacate. (Resp. Exh. J, p. 22) However, Petitioner's counsel expressly waived all other issues on the record during the evidentiary hearing. (Resp. Exh. J, p. 37) Further, Petitioner failed to raise this claim in his Rule 29.15 appeal. (Resp. Exh. K) Failure to present claims to the Missouri Court of Appeals during a petitioner's direct appeal or in a post-conviction proceeding constitutes procedural default. Evans v. Leubbers, 371 F.3d 438, 445 (8th Cir. 2004).

A federal court lacks the authority to reach the merits of procedurally defaulted claims unless petitioner can show cause and prejudice for the default or demonstrate a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995). "Establishing cause requires a showing of

11

some external impediment that frustrates a prisoner's ability to comply with the state procedural rules." Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir. 1998). Examples of such cause include a showing that a factual or legal basis for a claim was not reasonably available to counsel, or that interference by officials made compliance impracticable. Murray v. Carrier, 477 U.S. 478, 488 (1986)(citation omitted).

The miscarriage of justice exception applies only in extraordinary cases, particularly if a constitutional violation resulted in the conviction of an innocent person. Schlup, 513 U.S. at 327; Murray, 477 U.S. at 496. This requires petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Schlup, 513 U.S. at 324. The standard compels petitioner to persuade the court that in light of new evidence no juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 329; Perry v. Norris, 107 F.3d 665,666 (8th Cir. 1997). The Supreme Court noted in Schlup that claims of actual innocence are rarely successful because this type of evidence is usually unavailable. Id.

In his Traverse, Petitioner concedes that he failed to raise this claim on appeal from the denial of his motion for post-conviction relief. He appears to assert ineffective assistance of post-conviction appellate counsel as cause for his failure to properly present this claim to the state courts in his Rule 29.15 appeal. However, "[i]neffective assistance of post-conviction counsel may not be the basis of federal habeas relief." Anderson v. Bowersox, 262 F.3d 839, 842 (8th Cir. 2001). Furthermore, it cannot constitute cause for procedural default. Reese v. Delo, 94 F.3d 1177, 1182 (8th Cir. 1996). Therefore, Petitioner is unable to demonstrate cause and prejudice to overcome the procedural bar.

Likewise, Petitioner is unable to show actual innocence. While he contends that DNA testing

would prove his innocence, as another defendant in the case was the only individual to test positive for gun residue, this is not "new, reliable evidence." Instead, it is merely speculation and supposition. In light of the eyewitness accounts of the shooting as opposed to the unreliability of Petitioner's mother's testimony and the lack of any exculpatory evidence, Petitioner has failed to demonstrate actual innocence. Therefore, his third claim for habeas relief should be dismissed as procedurally barred.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Anthony D. Johnson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

    /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  2nd  day of July, 2007.